**MAYER·BROWN**

Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020-1001

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

**A. John P. Mancini**
Direct Tel +1 212 506 2295
Direct Fax +1 212 849 5895
jmancini@mayerbrown.com

December 29, 2017

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Energy Intelligence Group, Inc., et al. v. Scotia Capital (USA) Inc.*, No. 16-CV-617 (S.D.N.Y.)

Dear Judge Castel:

We write on behalf of Defendant Scotia Capital (USA) Inc. ("Scotia"), in the above-referenced action, in response to Plaintiffs, Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited (collectively, "EIG")'s letter to Your Honor, dated December 22, 2017 (the "Letter") for leave to file a Motion to Quash and for a Protective Order to prevent the deposition of Mr. Raja Sidawi. For the reasons discussed herein, Scotia respectfully requests that the court deny EIG the opportunity to quash Mr. Sidawi's deposition notice.

**I.       Background**

EIG is a serial litigant whose business model is premised on obtaining settlements from indistinguishable lawsuits. More than 50 substantively identical copyright infringement lawsuits have been filed in this court and courts across the country. Scotia denies liability and has pleaded multiple defenses, including copyright misuse and the applicable statute of limitations (which another court within this Circuit has recently held limits recovery of all damages by a copyright litigant to the preceding three years under the rolling approach). Scotia's defenses hinge upon, in part, recurrent, problematic activity by EIG's decision-makers, such as Mr. Sidawi, who have, relying on U.S. copyright laws, engaged in over-reaching behavior that could potentially preclude EIG from enforcing its copyrights altogether (for example, under the doctrine of copyright misuse).

Beginning in approximately 2005, EIG with the support of its board and ownership embarked on a business of pursuing copyright litigation against its publication subscribers. Discovery has shown that Mr. Sidawi played a crucial role in that process of converting the company's business from a subscriber-based model to a litigation-driven model. In addition, in

December 29, 2017
Page 2

response to Interrogatories served by Scotia, EIG itself disclosed that Mr. Sidawi is one of only two persons within EIG with authority to commence, settle, or dismiss a lawsuit. Those decisions will be critical to Scotia's defenses, including its "storm warnings" defense, which would preclude any claims older than three (3) years prior to the commencement of this litigation, given EIG's knowledge of similar activities by third parties and its failure to be duly diligent in discovering Scotia's allegedly infringing activities. This is especially true, given that EIG has brought over 55 copyright lawsuits against its clients and that Mr. Sidawi is one of only two people within the company to have authority to commence, settle, or dismiss those litigations. The discovery in this case, coupled with EIG's disclosures, make clear that Mr. Sidawi played a central role in the pursuit of *all* of EIG's copyright litigation, including any decisions on when, how, and why to bring the instant claim against Scotia (raising the question as to why EIG chose to wait until 2016 to bring the instant litigation). Accordingly, his deposition is crucial to Scotia's defense and should not be impeded.

In an attempt to obfuscate the facts and evidence demonstrating that Mr. Sidawi is a key witness, EIG instead turns to the parties dealings to prevent Mr. Sidawi's deposition. This argument not only finds no support in applicable law, EIG misrepresents the negotiations between the parties. Specifically, EIG misleads the court about Scotia's intent with respect to Mr. Sidawi's deposition and its willingness to accommodate Mr. Sidawi. Scotia first informed EIG that it intended to take the deposition of Mr. Sidawi on October 14, 2017. On November 21, 2017, EIG informed Scotia that it would "not agree to make him available for deposition in this case." Scotia served EIG with Mr. Sidawi's deposition notice on December 5, 2017, requesting a deposition on January 11, 2018. At numerous points in the Letter, EIG asserts that Scotia insists upon taking Mr. Sidawi's deposition "before taking any other depositions in this case." Letter at 2. This is incorrect. As of the date that Scotia served Mr. Sidawi's deposition notice, the close of fact discovery in this case was set for January 12, 2018. Mr. Sidawi's deposition was noticed for January 11, 2018. Furthermore, in the December 5, 2017 email transmitting the notice for Mr. Sidawi's deposition, counsel for Scotia stated "please note that while Mr. Sidawi's deposition is noticed for January 11, 2018, we are willing to adjust the date as needed to accommodate the witness." No amount of misrepresentation by EIG can change the facts of the parties' dealings: throughout this litigation, Scotia has consistently made clear to EIG that it viewed Mr. Sidawi's deposition and testimony as crucial to Scotia's defenses and sought to depose him as soon as EIG substantially completed its document production.

Scotia only seeks to depose Mr. Sidawi to seek information relevant to the claims and defenses at issue in this case. Scotia also intends to make all necessary accommodations to facilitate the deposition of Mr. Sidawi. It is clear that Mr. Sidawi possesses unique and personal knowledge relevant to this case. EIG's refusal to produce Mr. Sidawi as a witness is an attempt to obfuscate discovery in these proceedings, and therefore, any attempt to shield Mr. Sidawi from deposition should be rejected.

December 29, 2017
Page 3

## II.     Argument

### A.     Applicable Law

The Federal Rules of Civil Procedure allow for broad discovery. *See, e.g., Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, No. CV 09-4256 (ADS) (AKT), 2012 WL 1514871, at *1 (E.D.N.Y. Apr. 30, 2012). Because of the expansive scope of permissible discovery, "[a]n order barring a litigant from taking a deposition is most extraordinary relief[,] [and] [i]t is the party seeking such an order that bears the burden of proving that the proposed deponent has nothing to contribute." *In re Garlock*, 463 F. Supp. 2d 478, 481 (S.D.N.Y. 2006) (internal citations omitted).

EIG asserts that Mr. Sidawi's deposition should be barred by Second Circuit precedent that prohibits the deposition of certain corporate executives. EIG's argument fails. Even assuming the doctrine applies to small companies such as EIG, which has only approximately 100 employees, it is well-settled in this district that although discovery can be limited in some circumstances, "highly-placed executives are not immune from discovery." *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015) (quoting *Consol. Rail Corp. v. Primary Indus. Corp.,* No. 92 Civ. 4927 (PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993); *see also Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) ("[S]enior executives are not exempt from deposition."). The mere fact that Mr. Sidawi's title is "Chairman and Chief Executive Officer" of EIG does not render him impervious to deposition. The Second Circuit allows for depositions of high-ranking corporate officials if they have personal knowledge of relevant facts and of some unique knowledge that is relevant to the action. *Scott*, 306 F.R.D. at 124 (allowing deposition of CEO, stating "[t]he Court assumes that given his significant role with Chipotle for nearly two decades, he may well have unique information to offer plaintiffs. Moreover, given the dearth of 'classification documents' produced by Chipotle in this case, it is unreasonable to also limit the plaintiffs' opportunity to depose executives who plainly have relevant information, even if some of it may be cumulative"); *Chevron Corp.*, 2013 WL 1896932, at *3 (denying motion to quash deposition of CEO where his "corporate biography" indicated oversight of relevant activities, he was responsible for monitoring litigation, and "there is little doubt that [the executive] has relevant knowledge" even if his knowledge was not necessarily unique); *Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98 (S.D.N.Y. 2001) (granting motion to compel depositions of high-ranking executives of corporate defendants because they had unique knowledge concerning disputed claims); *Speadmark, Inc. v. Federated Dep't Stores, Inc.*, 176 F.R.D. 116 (S.D.N.Y. 1997) (permitting the plaintiff to depose the corporate defendant's chief executive officer/chairman, where the officer had participated in the conceptual discussions and/or negotiations of a contract that preceded the contract at issue, finding that the officer likely possessed relevant knowledge, and noting that he had participated in meetings concerning the concepts and/or negotiations); *see also Alliance Indus., Inc. v. Longyear Holding, Inc.*, No. 08CV 490S, 2010 WL 4323071, at *4 (W.D.N.Y. Mar. 19, 2010). In the instant case, Mr. Sidawi possesses both personal and unique knowledge relevant to this case.

December 29, 2017
Page 4

Mr. Sidawi's Declaration states the he does not have any unique personal knowledge with respect to EIG's infringement actions. Even assuming this is accurate, it is of no consequence. Courts in this district have held that even where a high-ranking corporate officer denies personal knowledge of the issues, that assertion is subject to testing by the party seeking the deposition. *Scott*, 306 F.R.D. at 122; *Burns v. Bank of Am.*, No. 03 Civ. 1685 (RMB) (JCF), 2007 WL 1589437, at *3 (S.D.N.Y. June 4, 2007); *see also Less v. Taber Instrument Corp.*, 53 F.R.D. 645, 647 (W.D.N.Y. 1971) ("A claim that [an executive] has no knowledge of any relevant facts should not be allowed to prevent his examination, since plaintiff is entitled to test his lack of knowledge."). Scotia is entitled to such testing, and therefore, Mr. Sidawi's deposition notice should not be quashed.

### B. Mr. Sidawi Possesses Unique and Personal Knowledge Relevant to This Litigation

#### 1. Mr. Sidawi Authorized the Pursuit of Litigation as a Business Strategy

EIG's suit against Scotia is part of a large-scale litigation campaign that EIG has been pursuing against dozens of other defendants, both inside and outside this district for many years. Publicly filed records in EIG's other lawsuits confirm that EIG obtains most of its revenue from copyright litigation. Documents produced in this matter clearly show that this campaign was done at the direction of Mr. Sidawi and required his authorization. Other documents show that EIG's goal to aggressively pursue its clients with copyright litigation had the support of both the board and ownership—*i.e.*, Mr. Sidawi. Additional documents produced in this case further confirm that Mr. Sidawi has ultimate decision-making authority with respect to EIG's copyright litigation. "Courts have allowed depositions of high ranking corporate executives where questions have been raised regarding corporate policies." *General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 84 (S.D.N.Y. 2002). EIG should not be permitted to withhold Mr. Sidawi just so EIG's other key witnesses, such as Mr. Thomas Wallin and Mr. Mark Wellman, can claim ignorance and point to Mr. Sidawi as the ultimate decision maker and authority figure with regard to EIG's extensive copyright litigation strategy.

#### 2. EIG Identified Mr. Sidawi as an Individual with Settlement Authority in Its Interrogatories

EIG itself has conceded that Mr. Sidawi is one of only two persons within the company with authority to commence, settle, or dismiss a lawsuit. That knowledge will be critical to Scotia's defenses, including its "storm warnings" defense, which would preclude any claims older than three (3) years prior to the commencement of this litigation, given EIG's knowledge of similar activities by third parties and its failure to properly investigate Scotia's alleged activities. This is especially true, given that EIG has brought over 55 copyright litigation lawsuits against its clients over the years and that Mr. Sidawi is one of only two people within the company with the authority to commence, settlement, or dismiss those litigations.

As EIG briefly noted in its Letter, EIG itself identified Mr. Sidawi as a person with knowledge relevant to Scotia's claims and defenses in this litigation. Scotia served EIG with an

December 29, 2017
Page 5

Interrogatory requesting that EIG "[i]dentify all Persons currently or formerly employed by Plaintiffs or who have otherwise worked for or on behalf of Plaintiffs . . . with authority to file, settle, and/or otherwise dismiss a lawsuit brought by Plaintiffs related to copyright infringement in connection with the at-issue EIG publications." In response, EIG identified only two persons, namely, Mr. Sidawi and Mr. Wellman, as individuals with such authority. By plaintiffs' own admission then, Mr. Sidawi is an individual with knowledge relevant to the claims and defenses at issue in this litigation. The mere fact that Mr. Wellman is also identified as an individual with authority does not obviate the need for Mr. Sidawi's deposition, as Scotia intends to depose both Mr. Wellman and Mr. Sidawi (in addition to other, key witnesses such as Mr. John Hitchcock). Further, given the paucity of documents produced by EIG in this litigation—for example, 50 documents *in total* that contain Mr. Wellman's name, notwithstanding EIG's claim now that Scotia can obtain the information it seeks from a witness who apparently has little or no documents relevant to this litigation—renders it "unreasonable to also limit [Scotia's] opportunity to depose executives who plainly have relevant information, even if some of it may be cumulative." *Scott*, 306 F.R.D. at 124 (allowing deposition of Chipotle co-CEO given the dearth of documents produced by Chipotle on a specific document request).

> 3. <u>Mr. Sidawi is the Only Witness that Can Testify to the Retention of His Personal and Professional Emails</u>

One of the primary reasons that Scotia views Mr. Sidawi's deposition as necessary is because of his use of personal email addresses and aliases in connection with EIG's business. During the course of discovery, EIG has produced emails in which Mr. Sidawi uses *at least* two different AOL.com email addresses to communicate with employees about EIG's copyright enforcement efforts and a proposed plan for detecting copyright violations. Scotia has made multiple requests that EIG confirm that all of Mr. Sidawi's relevant AOL.com emails have been preserved, searched, and produced. In response, EIG has stated only that "EIG has searched for and produced documents responsive to Scotia's Requests for Production relating to Mr. Sidawi, subject to EIG's objections and privilege claims." Based on discovery and conversations with counsel, Scotia is concerned that Mr. Sidawi may have destroyed key evidence by deleting his documents and used personal email accounts to transact business in an effort to shield his business dealings from discovery. EIG can offer no witness that would have knowledge relevant to these issues. Therefore, Mr. Sidawi is a necessary witness and Scotia is entitled to depose him.

December 29, 2017
Page 6

### III.     Conclusion

For the foregoing reasons, Scotia respectfully requests that the court deny EIG's request to file a Motion to Quash the deposition of Mr. Sidawi.

Sincerely,

*[signature]*

A. John P. Mancini