**MAYER • BROWN**

Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020-1001

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

January 11, 2018

**A. John P. Mancini**
Direct Tel +1 212 506 2295
Direct Fax +1 212 849 5895
jmancini@mayerbrown.com

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Energy Intelligence Group, Inc., et al. v. Scotia Capital (USA) Inc.*, No. 16-CV-617 (S.D.N.Y.)

Dear Judge Castel:

We write on behalf of Defendant Scotia Capital (USA) Inc. ("Scotia"), in the above-referenced action, in response to Plaintiffs, Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited (collectively, "EIG")'s letter to Your Honor, dated January 5, 2018 (the "Letter") requesting a Local Rule 37.2 conference. For the reasons discussed herein, Scotia respectfully requests that the Court deny the requested relief.

**I.      Background**

As a threshold matter, the Letter is an attempt to distract from Scotia's continued pursuit of documents it believes are relevant and that have not been properly preserved by EIG. As was partially outlined in Scotia's December 29 letter to Your Honor, there are numerous problematic deficiencies in EIG's production of documents. Counsel for Scotia sent several emails regarding these deficiencies, and in retaliation, EIG preemptively filed the Letter, addressing issues that the parties were either already in the process of resolving or had not been discussed in several weeks. Throughout their letter, EIG misrepresents the parties' discussions and omits critical information. For instance, throughout their letter, EIG characterizes the parties' discussion on January 5, 2018, as a "meet and confer." The deposition of Mr. Wallin took place on that date, and Mr. Gibson briefly raised these issues during a break in that deposition. As is made clear in the timing of their filing, EIG only raised these issues at deposition as a pretext to file this premature Letter representing that the parties' negotiations had failed.

As was raised in our December 29 letter to the Court, Scotia has significant concerns regarding the document preservation and collection done by EIG. Scotia is not the only defendant in a litigation filed by EIG with these concerns, which will be raised shortly in a

motion to compel. In *Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Ltd. v. ING Capital LLC*, 16-cv-8324 (S.D.N.Y.), Judge Sullivan ordered EIG to search personal email accounts used by EIG employees and to produce settlement agreements from similar copyright infringement cases.[1] Over the past several weeks, Scotia has continuously sought answers from EIG regarding the paucity of documents that have been produced and has been rebuffed at every opportunity. In what can only be viewed as gamesmanship by EIG, this Letter was hastily filed on the heels of Judge Sullivan's decision and after Scotia increased its requests that various document deficiencies be cured. The Court should not entertain this frivolous attempt to distract from its own deficient discovery, and the Letter should be rejected outright.

## II.      Argument

### 1. EIG's Request for Documents From Four New Custodians A Month Before the Close of Fact Discovery Is Disproportionate to the Needs of the Case and Unduly Burdensome

EIG's Letter concedes that they knew as early as December 8 that Scotia did not believe searching, reviewing, and producing documents from four new custodians was necessary, when it received Scotia's letter transmitting an additional production of more than five thousand documents. That letter stated, in part:

> As agreed to by the parties during our email exchange of November 22 and 24, 2017, this production consists of documents responsive to the amended claims contained in Plaintiffs' Amended Complaint, filed on November 17, 2017, from all data sources previously collected by Scotia. These sources include the individual custodians Joseph Bachmann, Leonard Benedetto, Jason Conway, Brian Corales, Blake Fernandez, Crissy Chambers Green, James Jones, Peter Kissel, Leonard Raymond, Richard Roberts, and William Sanchez, as well as a shared Outlook folder containing emails to and from, among others, Wes Ralston, Gene Gillespie, and Jonathan Robert. In light of the short time remaining to complete discovery in this action, Scotia believes that its collection and production from these sources is both reasonable and proportional to the needs of the case.

*See* Ex. A, December 8, 2017 Letter from. J. Dupont to P. Monahan.

This represented a good-faith effort to comply with EIG's request that Scotia supplement its production in an expedited manner, while also advancing the parties' mutual interest in meeting the discovery deadline. Furthermore, during the parties' December 13, 2017 meet and confer,

---

[1] Scotia has been requesting similar settlement agreements for several weeks. EIG has similarly denied Scotia's request. Scotia revisited this issue on a January 9 meet and confer with EIG and again requested these documents in light of Judge Sullivan's clear directive. Mr. Gibson refused to produce these documents and stated that EIG believes that Judge Sullivan is "wrong."

January 11, 2018
Page 3

Scotia informed EIG that it did not intend to collect and produce documents from these custodians because Scotia already produced hundreds, if not thousands, of emails to and from those individuals from sources already collected, including the custodians from whom Scotia agreed to collect documents and a shared Outlook folder. Scotia did not "arbitrarily" decide that these custodians' documents were not relevant. EIG moved to amend the complaint at a late stage in the litigation. When Your Honor's Order was entered, there were less than two months remaining in the discovery schedule. Accordingly, Scotia moved expeditiously to produce documents relevant to the new or expanded claims from all sources previously collected. To collect additional data would not have been feasible in the limited time remaining for discovery. Therefore, Scotia believes its production to be reasonable and proportional under the circumstances. Scotia made this clear during multiple discussions with EIG.

Nonetheless, EIG did not again raise the issue of searching the files of additional custodians until January 4, 2018—well after the original fact discovery deadline in this case would have passed. *See* Ex. B, January 4, 2018 email from J. Gibson to J. Dupont. Thereafter, the parties scheduled an additional meet and confer for Monday, January 8, 2018. However, before that meet and confer could take place, and with no discussion of custodians since mid-December, Mr. Gibson emailed stating that EIG saw "no need to further discuss" the inclusion of Mr. Ralston, Mr. Gillespie and Mr. Robert as document custodians. *Id*. There was no mention of Ms. Riedl.

Additionally, EIG admits in their letter that documents in Scotia's production "indicat[e] instances of infringement where Mr. Ralston copied and distributed OMI and PIW to Gene Gillespie." (Ltr. at 3). Without conceding that any such documents prove infringement, this statement in the Letter admits that Scotia has already produced precisely the documents that EIG seeks.

Lastly, EIG's citation to *Wagoner v. Lewis Gale Medical Center*, a West Virginia case about e-discovery mechanisms, is inapposite. Scotia never asserted that the collection of additional custodial data was too expensive. Rather, Scotia does not believe that EIG's request is proportional nor reasonable, especially in light of the short time remaining in the fact discovery period. EIG is no doubt aware that it would take over a month to pull, search, and process documents from four additional custodians—to say nothing of reviewing such documents for production. Well aware that the parties are slated to depose over ten witnesses in the short month remaining for discovery, EIG's attempt to force Scotia to search additional custodians at this late hour is nothing other than a sandbagging mechanism.

Finally, at no prior point in this litigation have the parties discussed the collection and production of Ms. Riedl's data. The very first mention of Ms. Riedl's documents occurred on January 5, 2018—the same day this Letter was filed—in email correspondence and during the deposition of Tom Wallin. EIG had never before requested that Scotia search Ms. Reidl's documents, nor indicated that it would like Scotia to even consider doing so. Scotia should be under no obligation to produce Ms. Riedl's information.

January 11, 2018
Page 4

### 2. EIG Still Fails to Explain Why Identification of Each Person Who Had Access to Plaintiffs' Publications on Scotia's Computer Systems Is Relevant To The Current Litigation

EIG again mischaracterizes the parties' "meet and confer" on this issue. The call on December 13 was scheduled solely to discuss scheduling for the expert discovery period and for depositions. *See* Ex. C, December 12, 2017 email from M. Abbott to J. Dupont. When EIG unexpectedly raised the issue of Interrogatory No. 1 on the call, among other issues, counsel for Scotia was taken by surprise and stated that Scotia would have to consider the issue before responding to EIG. Thereafter, by e-mail dated December 18, 2017, Scotia asked EIG to explain why EIG believed this information was relevant, especially where unauthorized "access" does not constitute infringement under U.S. copyright law, and especially where EIG has elected statutory, rather than actual, damages—and has used that election as the basis to withhold any and *all* prior license agreements from Scotia. Rather than respond to Scotia with its position on relevance, EIG went ahead and filed this present motion, exemplifying the difficulties that Scotia has had in obtaining professional courtesies or cooperation from EIG in this proceeding.

In the Letter, EIG *still* fails to explain why identification of "each" person who had "access" to the EIG publications is relevant or proportional to the needs of this case—especially where Scotia has produced documents showing whether any e-mails have been forwarded out of the shared folder. As noted above, and as EIG itself has previously conceded, "access" is not a right accorded a copyright owner under U.S. copyright law. *See* 17 U.S.C. § 106; *see also Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*, No. CV H-14-1903, 2016 WL 1203763, at *5 (S.D. Tex. Mar. 22, 2016) (finding that an email indicating that an individual other than the designated recipient was accessing OD "does not show that anyone besides [the designated recipient] or his assistant copied or actually viewed the Oil Daily"); Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6), Dkt No. 27 at 11 ("However, receipt of the publication by someone other than the person managing the subscription for the defendant does not mean, or even suggest, that a company is copying the publication.").

EIG's argument before this Court (and one not previously raised in the meet and confer process) as to why this information is "highly relevant" is to cite to the generic principle that "to succeed on a claim of copying infringement, the plaintiff must show that the defendant had access to a copyrighted work." (Ltr. at 4). But this argument is not only a red herring as applied to this case, it is disingenuous and misleading. In copyright infringement cases, a plaintiff may establish copying through *direct evidence of copying*, such as, for example, literally reproducing a copyrighted work by forwarding an e-mail, which is what EIG has alleged here. In other cases involving the creation of *new creative works* however, a plaintiff most often establishes copying through indirect evidence, which is a two-step test, requiring a plaintiff to prove both (1) "that the defendant had access to the copyrighted work" *and* (2) "that the two works are substantially similar." *Warner Bros. Inc. v. Am. Broad. Companies, Inc.*, 654 F.2d 204, 207 (2d Cir. 1981) (emphasis added).

January 11, 2018
Page 5

But the "access/substantial similarity" test is inapplicable here, because Scotia is not alleged to have created its own, independent work. Rather, any alleged copy would be, of course, a literal reproduction of EIG's work—thereby obviating any need to show access. *See Webb v. Stallone*, 910 F.Supp.2d 681, 687 (S.D.N.Y. 2012) (access does not need to be proven in cases of "striking similarity," or, works "so *identical* as to preclude any reasonable possibility of independent creation"). Therefore, EIG's cited case is wholly inapposite.

The only other argument EIG even attempts is one sentence stating that "the total number of individuals with access is relevant to Scotia's willfulness." (Ltr. at 4). EIG does not explain why this is so, nor provide any case law supporting this argument. As such, EIG has failed to set forth any cogent arguments for the relevance of the burdensome information it seeks.

### 3. Scotia Has Produced All Responsive Documents from Its Shared Outlook Folder

There is no reason for this issue to be before the Court. As a threshold matter, to the best of Scotia's knowledge, all responsive documents from this folder have been produced in this litigation. Scotia collected an entire shared Outlook folder, consisting of nearly 40,000 documents, reviewed each and every one of these documents for responsiveness and privilege, without the application of search terms, and produced all responsive documents. Again, during the deposition of Mr. Wallin on January 5, 2018, EIG's counsel alerted Scotia, for the very first time, that it believed there may be gaps in Scotia's production of documents from the shared folder and asked if Scotia would either produce any remaining responsive documents, or put in writing that all such documents had already been produced. Because the issue was being raised for the first time during a break in a deposition, Scotia's counsel informed EIG's counsel that, though Scotia believed it had produced all responsive documents in the folder, it would consider EIG's request to so state in writing. At 9:40PM on January 5, EIG emailed Scotia and for the first time identified these "significant gaps" in the shared folder documents. *See* Ex. D, January 5, 2018 email from M. Abbott to J. Mancini. This Letter was filed approximately 20 minutes later. Setting aside that Scotia has not represented to EIG that each of every relevant publication received by Scotia during the time period applicable to this case could be found in the shared folder, Scotia was not given any opportunity to investigate the supposed gaps identified by EIG or to consider its request to state in writing that it had produced all responsive documents found in that folder. EIG made no effort whatsoever to resolve this issue prior to raising it with the Court and made no mention of alleged gaps in production until minutes before filing the Letter. For that reason, EIG's request concerning Scotia's production of documents from a shared Outlook folder should be denied.

### 4. Scotia Should Not Be Compelled to Produce Additional Revenue Documentation

As an initial matter, EIG makes no argument that the financial information that is publicly available is insufficient for its purposes. Despite Scotia's position that additional information is unnecessary, Scotia agreed to consider EIG's request that it determine whether additional portions of the Form X-17A-5 filed with the SEC are available for production and whether Scotia would agree to produce such information. However, counsel was in the process of following up on this request when this Letter was filed. Scotia should not be compelled to produce any financial information beyond the Form X-17A-5 forms that are publicly available. Any information relevant to EIG's damages claims is publicly available, including a complete balance sheet and accompanying notes. *See, e.g.,* Ex. E, Scotia's Form X-17A-5.

Furthermore, in the Letter, EIG now asks the Court to "reconsider" its prior ruling that Scotia only produce financial information for the time period from 2016 to the present. Consistent with Your Honor's October 10, 2017 Order, any financial information pre-dating that time period is simply not relevant to show Scotia's size or financial health in the determination of an appropriate statutory damages award, especially where Scotiabank did not even acquire Howard Weil until 2012. EIG's argument that additional financial information is somehow also relevant to the issue of willfulness is also without merit, and without any support in the case law. In any event, EIG did not even make that argument in its prior application to the Court and should not be given a second bite at the apple.

### III. Conclusion

For the foregoing reasons, Scotia respectfully requests that the Court deny EIG's requested relief.

Respectfully submitted,

/s/ A. John P. Mancini
A. John P. Mancini
James C. duPont
Xiyin Tang
Melanie Burke
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
jmancini@mayerbrown.com
jdupont@mayerbrown.com
xtang@mayerbrown.com

Mayer Brown LLP

January 11, 2018
Page 7

*mburke@mayerbrown.com*

*Counsel for Defendant Scotia Capital (USA) Inc.*

cc: Counsel of Record (via ECF)