MAYER·BROWN

Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020-1001

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

January 16, 2018

A. John P. Mancini
Direct Tel +1 212 506 2295
Direct Fax +1 212 849 5895
jmancini@mayerbrown.com

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Energy Intelligence Group, Inc., et al. v. Scotia Capital (USA) Inc.*, No. 16-CV-617 (S.D.N.Y.)

Dear Judge Castel:

      We write on behalf of Defendant Scotia Capital (USA) Inc. ("Scotia"), in the above-referenced action. Pursuant to Local Civil Rule 37.2, Federal Rule of Civil Procedure 37, and Your Honor's Individual Rule 4.B, Scotia respectfully requests a conference with the Court to resolve certain outstanding discovery disputes, namely, to: (1) compel production of (a) settlement agreements in similar litigations; (b) enterprise-wide license agreements; and (c) documents pertaining to Plaintiffs' prior knowledge of the similar practices of forwarding emails; and (2) require Plaintiffs have to have its counsel personally conduct a search, review, and production of each of its custodians' e-mail accounts, including e-mails from their personal e-mail accounts and personal devices that were used for business purposes and provide an affidavit attesting to same, or, alternatively, to appoint a computer forensics expert at EIG's sole cost to search, collect, and produce any and all responsive documents, including any documents that may have been inadvertently or intentionally deleted.

      Plaintiffs have aggressively pursued discovery against Scotia, as well as the numerous other defendants in countless other lawsuits, putatively for the purposes of driving up litigation expense and thereby encouraging windfall settlements. Worse still, Plaintiffs have pursued those similar aggressive discovery tactics here in an attempt to deflect attention from its own severely deficient discovery responses. Indeed, as Scotia was planning to take depositions of Plaintiffs' witnesses, it uncovered an incredible paucity of documents and emails from each of Plaintiffs' custodians and requested an explanation from Plaintiffs' counsel. Rather than respond to those repeated inquiries, Plaintiffs raised long-dormant discovery disputes and prematurely ran to this

Mayer Brown LLP operates in combination with other Mayer Brown entities (the "Mayer Brown Practices"), which have offices in North America,
Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Court with its own discovery letter (Dkt No. 83), in an effort to either distract this Court from the severe deficiencies in EIG's production or to create a sense of equivalence where none exists.

The facts behind the deficiencies in Plaintiffs' document production in this case are startling. To date,[1] and despite an agreement in the parties' ESI protocol, and a subsequent order of this Court, that document production must be substantially completed 30 days before the close of fact discovery (which, under the prior schedule, was December 8, 2017), Plaintiffs have produced ***only four emails from its key custodians, Mark Wellman and Raja Sidawi.*** Specifically, EIG has produced only a total of *four* **(4)** e-mails from Mark Wellman and *zero* **(0)** e-mails from Raja Sidawi, the two key figures that Plaintiffs have acknowledged have the ability to commence litigation or settle the near 50 litigations it has filed against its clients. *See* Ex. C, Excerpts of Deposition of Tom Wallin, at 111. The paucity of these productions illustrates the significant difficulties that Scotia has experienced with discovery in this action, and warrants either a new collection, search, and production under the direction of Plaintiffs' counsel or, in the alternative, the appointment of a third party forensic investigative firm to search, collect, and produce any and all responsive documents, including any documents that may have been inadvertently or intentionally deleted. Counsel for both parties met and conferred on these issues on January 9, 2018, and Scotia has sent Plaintiffs' counsel numerous requests to address these issues, but have been unable to reach a resolution.

I. **Background**

On December 6, 2017, counsel for Scotia set forth an e-mail summary of, *inter alia*, three categories of documents that Plaintiffs had refused to produce documents for. These three categories were: (1) settlement agreements with third parties in other, similar infringement litigations (Scotia's First Requests for Production attached hereto as Ex. A, No. 36); (2) Plaintiffs' enterprise-wide licenses with third parties (Scotia's First Requests for Production, No. 35); and (3) documents showing Plaintiffs' knowledge of industry practices concerning the use of its publications by its customers (Scotia's First Requests for Production Nos. 26 and 27).

Counsel for Plaintiffs did not respond, and accordingly Scotia's counsel again followed up on these issues on December 18, 2017 (see attached Ex. B). When counsel for Plaintiffs again failed to respond, Scotia's counsel asked to discuss these topics during the next meet and confer, which the parties held on January 9, 2018. On that meet and confer call, counsel for Scotia, in addition to discussing the three specific categories enumerated above, also raised the alarming paucity of documents that had been produced in this matter for key custodians, including Raja Sidawi, Mark Wellman, and John Hitchcock. Namely, *zero* **(0)** e-mails from Mr. Sidawi had been produced, *four* **(4)** e-mails from Mr. Wellman had been produced, and a grand total of

---

[1] By e-mail dated Thursday, January 11, 2018, counsel for Plaintiffs noted that they were "still in the process of searching Mr. Wellman and Mr. Sidawi's emails for documents responsive to Scotia's third document requests." *See* Ex. G. Given that there is only one month left before the close of fact discovery, if Plaintiffs plan on producing what should be hundreds, if not thousands, of documents from each of Messrs. Wellman and Sidawi the night before their respective depositions and/or with only a few days remaining of fact discovery, this too evinces the gamesmanship with which Plaintiffs have approached the entire discovery process.

January 16, 2018
Page 3

*twenty* (**20**) e-mails from Mr. Hitchcock have been produced. Scotia's counsel reiterated their incredulity at the fact that, for the entire 12-year period for which Plaintiffs seek damages, Mr. Sidawi, the Chairman and CEO of EIG and the chief decision-maker in deciding which of Plaintiffs' clients to sue (*see* Ex. C at 67-68), did not send a *single* e-mail (whether privileged or non-privileged, as no entries bearing Mr. Sidawi's name in the "From" line were logged on the privilege log) that would be responsive to Scotia's document requests. Scotia inquired whether Plaintiffs would be willing to hire a third-party forensic firm to search and collect Plaintiffs' documents, to which Plaintiffs demurred. This remarkable deficiency merely highlights the numerous difficulties Scotia has experienced in obtaining cooperation from Plaintiffs during the fact discovery process. Each of these deficiencies is described in detail below.

II.     **Argument**

   A.   **The Very Paucity of Documents Plaintiffs Have Produced In This Case Evinces A Larger Pattern of Withholding and Deficiency**

As an initial matter, the dearth of documents Plaintiffs have produced for *key* witnesses in this case is emblematic of the many discovery difficulties Scotia has encountered in this case. Counsel for Scotia have repeatedly, in both meet and confers and in e-mails, expressed incredulity at the fact that, for example, only 4 e-mails from Mr. Wellman—a key figure in all of EIG's litigations against its clients—have been produced, or, 20 internal e-mails altogether that include Mr. Wellman's Gmail address anywhere in the document. Likewise, Plaintiffs have only produced 20 e-mails from John Hitchcock, the Managing Director of EIG and who has been repeatedly designated as Plaintiffs' Rule 30(b)(6) witness in other depositions in related cases, as well as only 49 e-mails from Tom Wallin, who was EIG's former president *and* Editor-in-Chief (and, as discussed below, a chief figure in revising Plaintiffs' copyright terms, which is at the heart of this case).

In response to these repeated requests for a plausible explanation, counsel for Plaintiffs have only repeated the standard adage that they are "well aware of its obligations under the Federal Rules." *See* Ex. D 12/7/2017 e-mail from Patrick Monahan.

For example, Messrs. Wellman and Sidawi, who were described as the two decision makers at EIG with "ultimate authority to decide how to proceed" on litigation matters by EIG's former editor in chief (Ex. C at 67-68), have authored a combined total of *four* e-mails in the existing production. Expanding that search to any documents that contain either Wellman or Sidawi's e-mail address, that number goes slightly up—to **26.** Remarkably, even taking into account entries in Plaintiffs' privilege log (which the parties are currently meeting and conferring on, as Scotia has concerns about its deficiency), Mr. Wellman has apparently only authored a combined total of **25** e-mails in the entire 12-year period for which Plaintiffs are seeking damages for. This paucity is all the more remarkable given Messrs. Wellman and Sidawi's final sign-off authority and key decision-making played in the near 50 litigations Plaintiffs have filed against its clients over a thirteen-year period. The decisions and discussions Messrs. Wellman and Sidawi (and other, key figures like Mr. Hitchcock) have made over the course of these 10-plus years is relevant to a number of Scotia's defenses, including but not limited to the question

January 16, 2018
Page 4

of whether Plaintiffs were on inquiry notice of their claim more than three years prior to bringing the present suit (thus severely curtailing the amount of damages they can receive).

Scotia cannot prove a negative, of course, but to point to just one example of how Plaintiffs cannot *possibly* have produced all responsive documents in those categories they've agreed to produce documents for, Scotia has identified highly-relevant and responsive documents appended only as exhibits to depositions in other cases. For example, one such document, bearing an exhibit stamp from a previous deposition, is a June 2007 e-mail from Mr. Wallin, which discusses the insertion of copyright notice language in all of EIG's publications. This document is responsive to, *inter alia*, Scotia's First Request for Production No. 24, which asked for "All Documents and Communications related to the allegation in Paragraph 27 of the Complaint that 'Plaintiffs provide copyright notices and warnings on their website, e-mails, articles and publications.'" *See* Plaintiffs' Responses and Objections to Defendant's First Set of Requests for the Production of Documents, appended hereto as Ex. E, at 15-16 (agreeing to, subject to certain objections, produce responsive documents). And yet, Scotia only had access to this document because it was produced as part of Plaintiffs' production of prior deposition transcripts and exhibits.

Further, given that these documents were not produced to Scotia other than as stamped deposition exhibit copies, this means that some documents were also not produced in their native format (as dictated by the parties' ESI protocol), and are incomprehensible or not navigable. For example, one such document is a report showing all active subscribers and pricing for all of EIG's publications, broken out by type of subscription and publication. This document is responsive to, *inter alia*, Scotia's First Request for Production No. 3, which asked for "All Documents and Communications related to the subscription fees for each of the EIG Subscriptions during the time Scotia maintained active subscriptions to all of the EIG Subscriptions, including, but not limited to, a fee schedule and Documents and Communications evidencing the manner in which the EIG Subscriptions were offered to Scotia." *See* Ex. E, at 5-6 (agreeing to, subject to certain objections, produce responsive documents).

That Scotia only had access to these documents (or portions thereof) because they happened to be appended to prior deposition transcripts that were produced raises the question as to whether certain documents have either been improperly deleted or otherwise improperly withheld. Accordingly, Scotia requests that the Court either: (1) require Plaintiffs to have its counsel personally conduct a search, review, and production of each of its custodians' e-mail accounts, including e-mails from their personal e-mail accounts and devices that were used for business purposes—as Judge Sullivan has already ordered in another of Plaintiffs' currently-pending litigations (Ex. F[2] at 2)—and provide an affidavit of their efforts and results; or, alternatively, (2) appoint a computer forensics expert at Plaintiffs' sole cost to search, collect, and produce any and all responsive documents, including any documents that may have been inadvertently or intentionally deleted.

---

[2] Order in *EIG v. ING Capital LLC*, Case No. 1:16-cv-8324 (S.D.N.Y. 2018) (Sullivan, J.).

### B. Plaintiffs Have Refused To Produce Relevant Settlement Agreements In Similar Litigations, Notwithstanding an Order By Judge Sullivan in a Parallel Case Compelling Production

In their First Requests for Production No. 36, Scotia requested production of "All Documents and Communications evidencing settlement agreements reached by Plaintiffs and any third party(s) related to a copyright infringement lawsuit brought by Plaintiffs against such third party(s) regarding any of Plaintiffs' Publications." Ex. A at 11. In their response, and in subsequent meet and confers, Plaintiffs refused to produce any documents. *See* Ex. E at 21-22.

On January 2, 2018, Judge Sullivan, in a parallel litigation alleging e-mail forwarding of Plaintiffs' publications, issued an order requiring the production of settlement agreements from similar copyright infringement cases, holding: "Plaintiffs' settlement agreements in similar, though not identical infringement cases may be relevant to the determination of damages in this case." Ex. F at 2 (Order in *EIG v. ING Capital LLC*, Case No. 1:16-cv-8324 (S.D.N.Y. 2018) (Sullivan, J.)). Notably, in *ING*, Plaintiffs had already produced 41 such relevant settlement agreements.

During the parties' meet and confer on January 9, 2018, Scotia again raised the issue of whether Plaintiffs would reconsider their position to produce relevant settlement agreements, especially in light of Judge Sullivan's ruling in a very similar case. Plaintiffs' counsel flatly stated that they believed Judge Sullivan was wrong and again refused to produce those agreements.

Production of settlement agreements from similar copyright infringement cases is highly relevant, as it provides one data point from which damages may be calculated. Even if Plaintiffs elect statutory damages, a statutory damages calculation does not arise in a vacuum. Rather, statutory damages must bear some relation to actual damages. *See Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 670 F.Supp. 1133, 1140 (E.D.N.Y. 1987); *RSO Records, Inc. v. Peri*, 596 F.Supp.849, 862 (S.D.N.Y. 1984). Further, it is of no burden for Plaintiffs to produce these agreements, given that it has already produced, or is otherwise required to produce, these agreements in parallel litigations in the same district.

Therefore, Plaintiffs should be required to produce settlement agreements with third parties in other copyright infringement litigations that it has filed.

January 16, 2018
Page 6

### C. Similarly, Plaintiffs Should Produce Its Enterprise-Wide License Agreements, Which Are Highly Relevant to A Damages Calculation

Scotia's Request No. 35 sought "All Documents and Communications identifying third parties who have maintained an enterprise-wide license to any of Plaintiffs' Publications." Namely, Plaintiffs offer enterprise-wide licenses that provide its clients with full access to every one of Plaintiffs' publications, for an unlimited number of users. In their response, Plaintiffs refused to produce any documents. *See* Ex. E, at 21.

Like prior settlement agreements, enterprise-wide license are even more relevant to a calculation of damages, even if Plaintiffs elect statutory damages. It is well-settled that one of the factors to be considered when determining a statutory damages award is "the revenue lost by the copyright holder." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). Plaintiffs should be required to produce enterprise-wide license agreements for purposes of showing the absolute maximum revenue it could have obtained from Scotia for access to every single one of Plaintiffs' publications for an unlimited number of users.

### D. Plaintiffs Seek to Extend Its Damage Recovery to a 12-Year Period, and Yet Refuse to Produce Storm Warning Documents That Would Determine Whether Damages Should Be Limited to Only 3 Years

Scotia's Request Nos. 26 and 27 seek documents that would show whether Plaintiffs had inquiry notice of its claims more than three years before the filing of the complaint. *See* Ex. A at 10 (seeking "All Documents and Communications reflecting Plaintiffs' knowledge or awareness of the internal distribution practices of third parties regarding Plaintiffs' Publications, including, but not limited to, distribution via email and shared files, as well as distribution of log-in credentials for use in accessing Plaintiffs' Publications via an online or web-based portal," and "All Documents and Communications related to Plaintiffs' understanding of industry practices concerning the use of Plaintiffs' Publications").

Scotia previously argued in its motion to dismiss that Plaintiffs were on inquiry notice of the infringement more than three years before the filing of the Complaint. This Court held that this argument was "a fact-based affirmative defense which may be better addressed on a more complete record at the summary judgment stage or at trial." Dkt No. 33 at 5. Now, Plaintiffs are attempting to obstruct the development of that factual record by withholding documents that would show whether Plaintiffs were on inquiry notice of their claim earlier than 2013. Plaintiffs' apparent position is that publicly-available lawsuits should suffice for purposes of Scotia's statute of limitations defense. Yet this Court had previously noted that "the fact that plaintiffs had filed lawsuits against other parties based on factually similar infringement allegations" did not "so obviously indicate[] infringement." Dkt No. 33 at 5. In order to develop a complete factual record, Scotia needs any and all documents showing the extent and depth of Plaintiffs' understanding of the practices of its clients, which may have triggered a duty to investigate or else evidence Plaintiffs' lack of diligence in investigating its claim against Scotia. For example, if Plaintiff was well aware of a practice of e-mail forwarding among its clients but nonetheless embarked upon a strategy of purposefully ignoring any infringement by smaller clients until it

January 16, 2018
Page 7

had sued the largest clients, this information may be relevant to Scotia's statute of limitations defense. *See generally Lorber v. Winston*, 962 F.Supp.2d 419, 444 (E.D.N.Y. 2013) (stating the general principle that "[a] plaintiff cannot bury her head in the sand" in holding that plaintiff's claim was time-barred for lack of due diligence in investigating claim).

Therefore, Plaintiffs should produce documents responsive to Request Nos. 26 and 27.

### III. Conclusion

For the foregoing reasons, Scotia respectfully requests a conference to address these discovery deficiencies, to (1) compel production of (a) settlement agreements in similar litigations; (b) enterprise-wide license agreements; and (c) documents pertaining to Plaintiffs' prior knowledge of the similar practices of forwarding emails; and (2) require Plaintiffs have to have its counsel personally conduct a search, review, and production of each of its custodians' e-mail accounts, including e-mails from their personal e-mail accounts and personal devices that were used for business purposes and provide an affidavit attesting to same, or, alternatively, to appoint a computer forensics expert at EIG's sole cost to conduct an independent forensic investigation and search, collect, and produce any and all responsive documents, including any documents that may have been inadvertently or intentionally deleted.

Respectfully submitted,

**MAYER BROWN LLP**

By:    /s/ A. John P. Mancini
A. John P. Mancini
James C. duPont
Xiyin Tang
Melanie Burke
1221 Avenue of the Americas
New York, New York  10020
*jmancini@mayerbrown.com*
*jdupont@mayerbrown.com*
*xtang@mayerbrown.com*
*mburke@mayerbrown.com*
T 212.506.2295
F 212.849.5895

*Counsel for Defendant Scotia Capital (USA) Inc.*

cc:    Counsel of Record (via ECF)